UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                          :
                                               :    Chapter 7
   JOHN CHASE                                 :
                                               :    Case No. 05-45706
                              Debtor.          :
-----------------------------------------------------------x
Roy Lubit, M.D.                                :
                              Plaintiff        :
                                               :    Adv. No. 06-01294
       v.                                      :
                                               :
John Chase                                     :
                              Defendant.       :
-----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

**A P P E A R A N C E S:**

Michael D. Assaf, Esq.[1]
Assaf & Mackenzie, PLLC
427 River Street
Troy, NY  12180
*Attorney for Plaintiff*


John T. Chase
1955 First Avenue, Apt. 227
New York, NY 10029
*Appearing Pro Se*


**MARTIN GLENN**
**United States Bankruptcy Judge**

---

[1]  The Plaintiff informed the Court at the beginning of the second day of the trial that he discharged his attorney Michael D. Assaf, Esq. ("Assaf"), and intended to proceed *pro se*. Assaf did not appear in Court for the second day of trial, notify the Court he would not appear, and did not file a motion to be relieved as counsel of record for Plaintiff as required by Local Bankruptcy Rule 2090-1. The Court has entered an order to show cause why Assaf should not be sanctioned for failure to comply with the Local Bankruptcy Rule and prior orders of the Court. The Court reserves jurisdiction in this matter to resolve issues concerning Assaf's conduct.

1

The plaintiff Roy Lubit, M.D. ("Lubit") commenced this adversary proceeding against the debtor John T. Chase ("Chase" or the "Debtor") seeking a determination of the dischargeability of a debt under § 523(a)(2)(A) or § 523(a)(2)(C)(I) of the Bankruptcy Code for fees for forensic psychiatric consultation and expert witness services performed during the Debtor's child custody proceeding pending in the Family Court of Columbia County, New York. The Court conducted a two-day trial on March 1, 2007 and March 30, 2007 during which it heard the testimony of witnesses and received documentary exhibits.[2] The following constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. For the reasons explained below, the Court holds that (1) Lubit's prepetition fees are not excepted from discharge pursuant to § 523(a)(2)(A) & (C)(I) of the Bankruptcy Code and, therefore, can be discharged under § 727(b) of the Bankruptcy Code, and (2) Lubit's postpetition fees are not dischargeable under § 727(b) of the Bankruptcy Code.

## I.   JURISDICTION

The Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]   This matter was tried in conjunction with Michael R. Varble v. John Chase, Adv. Proc. No. 06-1190.

2

## II.     BACKGROUND

On October 12, 2005, the Debtor filed a petition under chapter 7 of the Bankruptcy Code. During May 2005 the Debtor hired Lubit to perform forensic psychiatric consultation and expert witness services in the Debtor's child custody proceeding pending in the Family Court of Columbia County, New York. *See* Tr. (3/1/07) at 188.[3] Sometime near the outset of this engagement, the Debtor informed Lubit that he did not have any money to pay him for his services at that time but that he was going to receive a distribution under a "trust" on his 62nd birthday and that he would be able pay Lubit from this distribution. *Id.* at 190.[4]

Lubit subsequently requested on several occasions that the Debtor enter into a contract setting forth the Debtor's promise to pay Lubit from his distribution from the family trust. *Id.* at 192. Chase and Lubit executed a document reflecting this agreement on August 11, 2005. *See* Plaintiff Varble Ex. K. The contract expressly states that "The outstanding balance for Lubit's services in this matter is payable by John T. Chase's sixty second (62) birthday when it is understood that funds will be distributed from a trust for which John T. Chase is a beneficiary." *See id.*

Lubit performed both pre and postpetition services for the Debtor, with his fees based on his hourly rate of $350.00, totaling $63,087.50.[5] *See* Plaintiff Lubit Ex. 3. The

---

[3]     The following convention is used in citing to the trial record. The March 1, 2007 hearing transcript is cited by date and page. For example, "Tr. (3/1/07) at 188" refers to page 188 of the March 1, 2007 transcript.

[4]     It is difficult to discern from Lubit's testimony when exactly the Debtor informed Lubit of the trust and when he promised to pay Lubit from his distribution. *See, e.g.,* Tr. (3/1/07) at 193. Lubit merely states that it was sometime around May or June of 2005. *Id*.

[5]     Lubit contends that Chase incurred fees in the amount of $7,350.00 after Chase filed for bankruptcy.

3

Debtor did not make any payments towards this debt, *see id.*, and Lubit cannot look to the Debtor's distribution from the family trust for payment because the trust does not exist nor did it ever exist. *See* Tr. (3/1/07) at 143. On February 17, 2006, Lubit filed a complaint (the "Complaint") seeking to have these fees declared nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code alleging that the Debtor obtained his services by false pretenses, false misrepresentations, or actual fraud. Lubit also contended in the Complaint that any fees associated with services rendered within 90 days prior to the bankruptcy filing should be excepted from discharge under § 523(a)(2)(C)(I) of the Bankruptcy Code.

### III. DISCUSSION

**A. Section 523(a)(2)(A) of the Bankruptcy Code**

Section 523(a) specifies which of the debtor's debts are excepted from discharge. Section 523(a)(2)(A) provides that an individual debtor will not be discharged from any debt for "services" obtained by (1) false pretenses, (2) a false representation, or (3) actual fraud - other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). The three terms used in § 523(a)(2)(A) embody different concepts, and Congress' "use of the disjunctive 'or' evidences [an intent] to deny a discharge under any [such term] . . . ." *Sandak v. Dobrayel* (*In re Dobrayel*), 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (citing *In re Soliz*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996)); *Colonial Nat'l Bank USA v. Leventhal* (*In re Marc Leventhal*), 194 B.R. 26, 28 (Bankr. S.D.N.Y. 1996) ("Section 523(a)(2)(A) speaks of false pretenses, a false representation, or actual fraud, evidencing a statutory distinction among the three.") (quotations omitted).

4

In view of the "fresh start" policy of the Bankruptcy Code, exceptions to the dischargeability of debts should be narrowly construed in favor of a debtor. *Nat'l Union Fire Ins. Co. v. Bonnanzio* (*In re Bonnanzio*), 91 F.3d 296, 300 (2d Cir. 1996). The plaintiff has the burden of demonstrating nondischargeability under this section by a preponderance of the evidence. *Sandak v. Dobrayel*, 287 B.R. at 12. Thus, Lubit has the burden of demonstrating nondischargeability as to each of these causes of action by a preponderance of the evidence.

### i.    False Pretenses

Under § 523(a)(2)(A), the term "false pretenses" is defined as "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *Gentry v. Kolver* (*In re Kovler*), 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). A false pretense has also been held to be an implied misrepresentation or conduct intended to create a false impression. *Voyatzoglou v. Hambley* (*In re Hambley*), 329 B.R. 382 (Bankr. E.D.N.Y. 2005) (citing *In re Bozzano*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994)). In effect, a false pretense is designed to convey an impression without an oral representation. *See Wings v. Hoover* (*In re Hoover*), 232 B.R. 695, 700 (Bankr. S.D.Ohio 1999); *Bobilya Chrysler v. Gross* (*In re Gross*), 175 B.R. 277 (Bankr. N.D.Ind. 1994) (stating that causes of action for "false pretenses" and "false representations" under § 523(a)(2)(A) are two distinct actions; the former involves implied misrepresentations, while the latter deals with expressed, either oral or written, misrepresentations).

In order to establish that a debt is nondischargeable as a debt for money obtained by false pretenses, the plaintiff must establish (1) an implied misrepresentation or conduct by the defendant; (2) promoted knowingly and willingly by the defendant; (3)

5

creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant. *In re Dobrayel*, 287 B.R. at 12.

Here, Lubit has not presented any evidence that would support a finding that the Debtor made implied misrepresentations or engaged in conduct that fostered a false or misleading impression with respect to the Debtor's financial wherewithal. Rather, Lubit points to the Debtor's oral and written representation that the Debtor would pay Lubit from the family trust. *See* Tr. (3/1/07) at 192. As discussed below, these misrepresentations are actionable, if at all, under the "false representation" and "actual fraud" prongs of § 523(a)(2)(A). For these reasons, the Court holds that the debt cannot be exempted from discharge under the "false pretenses" prong of § 523(a)(2)(A).

### ii. False Representation

A court can find a false representation if the plaintiff presents proof that the defendant (1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiff to turn over money or property to the defendant. *In re Dobrayel*, 287 B.R. at 12 (citing BLACK'S LAW DICTIONARY at 619 (7th ed. 1999)). With respect to the second element, "intent to deceive" may be established through circumstantial evidence and inferred from the totality of the evidence presented. *Hong Kong Deposit & Guaranty Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990) ("[I]ntent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor]."). The plaintiff must also establish justifiable reliance. *See In re Gonzalez*, 241 B.R. 67, 71 (S.D.N.Y. 1999) ("To exempt a debt from discharge under

6

Section 523(a)(2)(A), the non-debtor's reliance must be 'justifiable' under the circumstances.") (citing *Field v. Mans*, 516 U.S. 59 (1995)).

Here, Lubit presented evidence that the Debtor made representations that he was going to receive a distribution under a "trust" on his 62nd birthday and use such funds to pay for Lubit's services. These statements were false because the family trust never existed. *See* Tr. (3/1/07) at 143. Further, the totality of the evidence establishes that at the time the Debtor made these false representations he intended to deceive Lubit into performing services. Thus, the dispositive issue is whether Lubit has established justifiable reliance. In discussing what constitutes "justifiable reliance" for purposes of § 523(a)(2)(A), the Supreme Court stated:

> Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. Justifiability is not without some limits, however . . . . [A] person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.

*Field*, 516 U.S. at 70-72 (citations and quotations omitted).

The Court finds that Lubit did not establish that he actually, let alone justifiably, relied on the Debtor's misrepresentation. Lubit testified that the Debtor told him early in their professional relationship that he did not have any funds to pay for Lubit's services and that he thought he would be able to pay Lubit in roughly three years. *See* Tr. (3/1/07) at 190. Lubit stated that he was concerned with the Debtor's proposal because it was his experience that people did not pay their bills after services were rendered. *Id.*; *see also* Defendant's Exhibit 2 at p. 7 – 8, p. 75, lines 6-23.

7

Given his admission that it was his experience that he had not been paid after services were rendered, the Court cannot find justifiable reliance. More importantly, Lubit never asked to see a copy of the trust documents. *See* Tr. (3/1/07) at 203. He also knew that the Debtor was in his mid-forties at the time, so any payment towards these fees from a trust distribution was perhaps twenty years away. *See* Tr. (3/30/07) at 107. Lubit blindly relied upon the Debtor's misrepresentation that he would pay Lubit from the trust. If he had made a cursory investigation by requesting a copy of the trust documents, the falsity of the Debtor's misrepresentation would have been apparent to him.

Lubit also testified before the Columbia County court on August 11, 2005, only hours after the Debtor executed the agreement to pay Lubit from the non-existent family trust, that he got involved with the Debtor's child custody case, not because he expected to be paid for his services, but because he felt that a psychiatrist needed to get involved to make sure that the child's life got back on track:

> Q. Are you being paid for your testimony today?
> A. No.
>
> Q. And if you're not being paid why are you testifying?
> A. Well, I'm never paid for my testimony. I'm paid for my time.
>
> Q. Are you being paid for your time?
> A. Well, I will bill for my time. Normally I'm paid in advance. Mr. Chase does not have the funds -- did not have the funds to pay me for my time, so I will bill him. I hope in the future he does pay me. But in the past I've never been paid afterwards.
>
> Q. Why are you testifying then?
> A. I feel strongly about this case, and I'm primarily -- well, my identity is as a child trauma psychiatrist, and I -- you know, you approached me with the case. I found the story hard to believe at first. And then as I gathered more information, saw

8

> Dr. Cale's report I realized some very perturbing things were
> very worrisome things were happening to Dylan Chase and I
> felt that some psychiatrist needed to step up to the plate and try
> to help to see to it that Dylan's life got back on track.

*See* Defendant's Exhibit 2 at p. 7 – 8.

On or about October 1, 2005, Lubit also drafted a letter to the Judge presiding over the state court custody proceeding that further demonstrates that Lubit did not rely on the Debtor's misrepresentation. In a copy of the letter that was sent to the Debtor, Lubit stated that he had "not been paid by Mr. Chase nor do I expect to be paid by him. As you know he expects to file for bankruptcy." *See* Defendant's Exhibit 1.

In light of the foregoing, the Court holds that Lubit did not establish justifiable reliance on the Debtor's misrepresentations and, therefore, the debt cannot be exempted from discharge under the "false representation" prong of § 523(a)(2)(A).

### iii.    Actual Fraud

"[A]ctual fraud" generally requires proving the "five fingers of fraud." *In re Dobrayel*, 287 B.R. at 12. The Court looks to the common law of torts, as embodied in the Restatement (Second) of Torts, in construing the elements of § 523(a)(2)(A). *Weiss v. Alicea* (*In re Alicea*), 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999) (citing *Field v. Mans*, 516 U.S. 59, 70 (1995)). Under § 525 of the RESTATEMENT, the elements of common law fraud are (1) a misrepresentation, (2) fraudulent intent, or scienter, (3) intent to induce reliance, (4) justifiable reliance, and (5) damage. *Accord In re Alicea*, 230 B.R. at 500.

With respect to the second element, a misrepresentation is made with fraudulent intent if the maker knows or believes that his statements are false. *Taub v. Morris* (*In re Morris*), 252 B.R. 41, 48 (Bankr. S.D.N.Y. 2000); *Diduck v. Kaszycki & Sons*

9

*Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir. 1992). As stated by the court in *In re Alicea*, 230 B.R. 492, 501 (Bankr. S.D.N.Y. 1999):

> The test may be stated as follows. If, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). If he did so intend at the time he made the promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made.

*Id*. at 501 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997)).

In this case, Lubit presented evidence that the Debtor made false representations when he stated Lubit would be paid from a family "trust" that did not exist. Further, the "fraudulent intent" element is satisfied because the Debtor made these representations for the sole purpose of inducing Lubit to perform forensic psychiatric consultation and expert witness services.

Here again, the dispositive issue with respect to this cause of action is whether Lubit established that he justifiably relied on the Debtor's misrepresentations. As discussed above, Lubit has failed to satisfy his burden with respect to this issue. For this reason, the Court holds that the debt was not created as a result of a fraudulent statement and, therefore, is not exempted from discharge under the "actual fraud" prong of § 523(a)(2)(A).

**B.      Section 523(a)(2)(C)(I) of the Bankruptcy Code**

Lubit performed $46,550.00 worth of services within the 90 days prior to Debtor's bankruptcy filing and contends that such fees are presumed to be nondischargeable under § 523(a)(2)(C)(I). Section 523(a)(2)(C)(I) provides: "[C]onsumer debts owed to a single creditor and aggregating more than $500 for luxury

10

goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable . . . ." 11 U.S.C. § 523(a)(2)(C)(I). The Bankruptcy Code defines "luxury goods and services" in the negative. Section 523(a)(2)(C)(ii)(II) merely provides that the term "luxury goods" does not include "goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor . . . ." When determining whether services can be characterized as "luxury . . . services" courts look to the circumstances of each particular case to see if the services were "extravagant," "indulgent," or "nonessential." *See Montgomery Ward & Co. v. Blackburn* (*In re Blackburn*), 68 B.R. 870 (Bankr. N.D.Ind. 1987) ("Luxury in itself implies extravagance, superfluousness, self-indulgence; going beyond or overflowing an implicit, indeterminate level of comfort.").

The Court finds that the services performed by Lubit fall far short of being characterized as "extravagant," "indulgent," or "nonessential." Indeed, courts have routinely held that fees and expenses incurred in connection with a matrimonial proceeding do not qualify as "luxury . . . services" within meaning of § 523(a)(2)(C)(I). *See, e.g, Shah v. Shaw* (*In re Shaw*), 294 B.R. 652 (Bankr. W.D.Pa. 2003) (holding that legal fees incurred in connection with debtor's appeal of a divorce court order were not in the nature of "luxuries" under 11 U.S.C. § 523(a)(2)(C)); *In re Vernon*, 192 B.R. at 170 ("The provision of legal services for divorce are not for some extravagant, indulgent, or non-essential object. . . . Divorce serves a necessary family function--to end a dysfunctional family and resolve obligations of each spouse. Thus, the services involved here were not of a luxury nature."). Therefore, the Court concludes that the $46,550.00

11

worth of services performed within the 90 days prior to Debtor filing for bankruptcy are not excepted from discharge under § 523(a)(2)(C)(I) of the Bankruptcy Code.

### C. Plaintiff's Postpetition Fees Are Not Discharged Under § 727(b) of the Bankruptcy Code

As stated above, Lubit performed services for the Debtor, both pre and postpetition. Chase engaged Lubit in May 2005 agreeing to pay him $350.00 per hour for services performed. The question becomes whether Lubit's claim for postpetition fees is subject to discharge under § 727(b) of the Bankruptcy Code. Section 727(b) of the Bankruptcy Code states: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ." *Id*. The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, <u>contingent</u>, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmated, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added). The Supreme Court has stated that the "plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation . . . ." *F.C.C. v. NextWave Personal Communications Inc.*, 537 U.S. 293, 302-03 (2003) (citing *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990)). The Bankruptcy Code does not define the term "contingent" but the court has stated that a claim is "contingent" when the debtor's legal duty to pay it does not come into existence until triggered by the occurrence of a future event. *In re Caldor, Inc.*, 240 B.R.

12

180, 191 (Bankr. S.D.N.Y. 1999). Thus, the issue raised by these circumstances is whether the expert witness fees for services performed postpetition on an hourly basis constitute a contingent claim - or right to payment - that arose before the date Debtor filed his chapter 7 bankruptcy petition.

The Court has not found any cases on point addressing the issue whether a debt arising from the performance of legal or expert witness services on an hourly basis postpetition pursuant to a prepetition agreement are contingent claims subject to discharge under § 727 of the Bankruptcy Code. Although other jurisdictions have addressed the issue whether a debt for legal services provided to a debtor postpetition pursuant to a prepetition agreement are subject to discharge under § 727 of the Bankruptcy Court, and reached conflicting results, these cases are distinguishable because the agreements in those cases provided for an agreed upon lump-sum fee for rendering both prepetition and postpetition services in connection with a chapter 7 case. *Compare Gordon v. Hines* (*In re Hines*), 147 F.3d 1185 (9th Cir. 1998) (holding that a prepetition fixed fee contract for postpetition legal services does not give the attorney a "claim" within the meaning of § 101(5)(A) because it is the rendition of services that creates the claim, not the execution of a fee agreement and, therefore, if postpetition services are rendered, the attorney does not have a prepetition (or dischargeable) claim), *with Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125 (7th Cir. 2003) (holding that prepetition and postpetition debts for legal fees pursuant to a prepetition fixed fee agreement are subject to discharge and disagreeing with *In re Hines* because "nothing in the Code permits a categorical exception for any kind of debt other than one listed in § 523 – and [postpetition] legal fees are not on that list"); *see also Rittenhouse v. Eisen*, 404

13

F.3d 395, 397 (6th Cir. 2005) (stating that postpetition attorneys fees are not dischargeable). *Cf. In re Fickling*, 361 F.3d 172, 176 (2d Cir. 2004) (stating that postpetition attorneys fees are not dischargeable).

The Court does not need to weigh-in in this case on this circuit split. Ultimately, the Court adopts the rationale set forth in Judge Tashima's concurrence in *Hines* and holds that fees owed for services performed postpetition on an hourly basis pursuant to a prepetition agreement do not constitute a contingent claim – or right to payment – that arose before the date Debtor filed his chapter 7 bankruptcy petition. Judge Tashima concluded that the attorney in *Hines* accrued a "claim" only when he actually provided the postpetition services for which the debtor agreed to pay him. 147 F.3d at 1192. Judge Tashima further stated that the contingency referred to under § 101(5)(A) of the Bankruptcy Code cannot be one party's decision to perform on the contract. *Id.* Following this rationale, the Court holds that Lubit had "an enforceable obligation" – a "right to payment" – only after he actually rendered the postpetition expert witness services and the fact that his right to payment was contingent upon Lubit actually performing the services is not sufficient to bring this claim within § 101(5)(A) of the Bankruptcy Code. As such, the fees attributable to services performed postpetition cannot be discharged under § 727(b) of the Bankruptcy Code. Lubit is left to his state court remedies if he decides to pursue this claim; the only thing the Court decides here is that the claim, if any, cannot be discharged under § 727(b) of the Bankruptcy Code.

### IV. CONCLUSION

For the foregoing reasons, the Court holds that (1) Lubit's prepetition fees are not excepted from discharge pursuant to § 523(a)(2)(A) & (C)(I) of the Bankruptcy Code

14

and, therefore, may be discharged under § 727(b) of the Bankruptcy Code, and (2)

Lubit's postpetition fees are not discharged under § 727(b) of the Bankruptcy Code.

**IT IS SO ORDERED**

DATED:	New York, New York	     **/s/Martin Glenn**
	May 18, 2007	THE HONORABLE MARTIN GLENN
		United States Bankruptcy Judge