UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                                   :

                                                        :        Chapter 7

   JOHN CHASE                                          :

                                                        :        Case No. 05-45706

                                  Debtor.               :

--------------------------------------------------------- -x

Roy Lubit, M.D.                                         :

                                  Plaintiff             :

                                                        :        Adv. No. 06-01294 (MG)

                 v.                                     :

                                                        :

John Chase                                              :

                                  Defendant.            :

--------------------------------------------------------- -x

FOR PUBLICATION


## MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS
## AGAINST MICHAEL D. ASSAF, ESQ.


**A P P E A R A N C E S :**

Assaf & Mackenzie, PLLC
*Attorney for Sanctions Respondent*
427 River Street
Troy, NY 12180
By:    Michael D. Assaf, Esq.


**MARTIN GLENN**
**United States Bankruptcy Judge**


     Attorney Michael D. Assaf, Esq. ("Assaf") represented the plaintiff Roy Lutbit,

M.D. ("Lubit") in this adversary proceeding seeking to deny a discharge to the debtor,

John Chase ("Chase"), for a debt owed to Lubit for expert witness services Lubit

provided to Chase in a state court child custody proceeding in Columbia County, New

York.  Chase's chapter 7 case and this adversary proceeding were originally pending

before Judge Arthur Gonzalez, but the adversary proceeding was transferred to me on

December 18, 2006 (ECF No. 12).  Judge Gonzalez conducted most of the pretrial

proceedings in the adversary proceeding before the transfer.  After some additional

pretrial proceedings, I conducted a trial of the adversary proceeding (along with a

companion case, *Varble v. Chase*, Adv. No. 06-01190) on March 1, 2007 and March 30,

2007.  Assaf appeared on Lubit's behalf throughout the pretrial proceedings and during

the first day of trial on March 1, 2007.  But Assaf failed to appear for the continuation of

the trial on March 30, 2007, a date that was specifically set with Assaf's agreement.  At

the start of trial on March 30, Lubit stated that Assaf would not appear because Lubit had

discharged Assaf the previous evening.  Assaf had not, however, filed a motion to

withdraw as counsel of record.  After further questioning of Lubit by the Court, the trial

went forward with Lubit appearing *pro se*.  The debtor-defendant Chase also appeared

*pro se*, as did the plaintiff in the companion case, Michael Varble, although Varble is an

attorney.  Indeed, Varble was Chase's attorney in the child custody case in which Lubit

served as Chase's expert witness.  Varble was also seeking to deny Chase's discharge for

unpaid fees in the child custody case.

On May 18, 2007, the Court decided both the *Lubit* and *Varble* cases in separate

written opinions.  *See Lubit v. Chase (In re John Chase)*, Adversary No. 06-01294 (MG),

2007 WL 1470466 (Bankr. S.D.N.Y. May 18, 2007) and *Varble v. Chase (In re John

Chase)*, Adversary No. 06-01190 (MG), 2007 WL 1470467 (Bankr. S.D.N.Y. May 18,

2007).  In *Lubit*, the opinion noted Assaf's failure to appear for the second day of trial

and reserved jurisdiction to decide whether sanctions should be imposed against Assaf

based on his conduct in the case:

> Assaf did not appear in Court for the second day of trial, notify the Court
> he would not appear, and did not file a motion to be relieved as counsel of
> record for Plaintiff as required by Local Bankruptcy Rule 2090-1.  The
> Court has entered an order to show cause why Assaf should not be
> sanctioned for failure to comply with the Local Bankruptcy Rule and prior
> orders of the Court.  The Court reserves jurisdiction in this matter to
> resolve issues concerning Assaf's conduct.

*Lubit*, 2007 WL 1470466, at *1 n.1.

For the reasons explained below, the Court concludes that an order imposing sanctions against Assaf should be entered.  Under the circumstances presented here, the most appropriate sanction against Assaf is an order barring him from recovering any additional fees or expenses from Lubit, beyond the amount of the retainer previously received.

## BACKGROUND

Assaf's representation of Lubit in this adversary proceeding has been marked by numerous instances of Assaf disregarding court rules from the start of the proceeding to its finish.  On May 18, 2007, along with its written opinion in the *Lubit* case, the Court entered a separate order requiring Assaf to show cause why an order should not be entered "imposing sanctions against him pursuant to (1) Fed. R. Civ. P. 16(f), made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7016, (2) Local Bankruptcy Rule 9020-1(a) & (b), and (3) the inherent power of the Court, based upon (i) Assaf's failure to appear in Court for the second day of trial in this adversary proceeding on March 30, 2007, as previously ordered by the Court, and (ii) Assaf's failure to obtain an order permitting him for cause shown, pursuant to Local Bankruptcy Rule 2090-1(e), to withdraw as plaintiff's attorney of record before failing to appear for the second day of trial."  ("Order to Show Cause") (ECF No. 46).  The Order to Show Cause also

3

specifically placed Assaf on notice and required him show why a "sanctions order should

not be entered, including provisions barring Assaf from collecting any additional fees

and/or expenses in connection with this adversary proceeding from his client, Roy Lubit,

M.D., and/or requiring Assaf to disgorge any fees previously received from his client,

Roy Lubit, M.D., in connection with this adversary proceeding, or imposing any other

sanctions appropriate in the circumstances." *Id.* Additionally, the Order to Show Cause

advised Assaf that, in deciding whether to impose sanctions, the Court would also

consider Assaf's prior conduct in this adversary proceeding, and whether it establishes a

pattern of misconduct by Assaf in disregarding court rules and orders, including the

following: (1) the conduct described in Judge Gonzalez's December 21, 2006 Order

denying without prejudice Chase's motion to dismiss the adversary proceeding for (i)

Assaf's failure to appear for two pre-trial conferences, (ii) Assaf's failure to file a pre-

trial order as directed by the Court, and (iii) Assaf's failure to appear at the December 20,

2006 hearing on Chase's motion to dismiss (*see* ECF No. 14); (2) the conduct described

in the Court's January 10, 2007 Order, denying plaintiff's motion for summary judgment

due to Assaf's failure to comply with Local Bankruptcy Rule 7056-1(a) by filing a

motion for summary judgment prior to the scheduled pre-motion conference and failure

to include with the motion a statement of undisputed facts as required by Local

Bankruptcy Rule 7056-1(b) (*see* ECF No. 22).

     The Court held a sanctions hearing on June 22, 2007.  At the start of the hearing

the Court advised Assaf that in reviewing Assaf's submission in opposition to sanctions

and in preparing for the hearing, the Court found that while Assaf stated he appeared *pro*

*hac vice* on behalf of Lubit in the adversary proceeding, a review of the docket for the

adversary proceeding and Chase's chapter 7 case reflects that the *only* order granting

Assaf permission to appear *pro hac vice* was for the representation of Kristin Chase, the

debtor's ex-wife, and Melody Mackenzie, Assaf's law partner, who represented Kristin

Chase in the Chases' divorce proceeding, in connection with the debtor's efforts to have

his ex-wife and Mackenzie held in civil contempt for allegedly violating the automatic

stay (*see* Case No. 05-45706, ECF Nos. 6, 9, 10). Assaf never moved to be admitted *pro

hac vice* to represent Lubit in the adversary proceeding. The Court told Assaf that it

intended to consider whether sanctions should be imposed against Assaf for failure to be

admitted to represent Lubit in the adversary proceeding. Because this additional ground

for possible sanctions was not identified in the Order to Show Cause, the Court told Assaf

that it was prepared to adjourn the sanctions hearing to give Assaf time to prepare and

respond to this additional ground, or, if Assaf chose to go forward with the hearing, to

allow Assaf to file a supplemental submission after the hearing. Assaf stated that he

wished to go forward with the hearing without an adjournment and that he did not wish to

make a supplemental submission. Assaf stated that his failure to be admitted *pro hac vice*

to represent Lubit in the adversary proceeding reflected his belief that once he was

admitted in the chapter 7 case to represent Kristin Chase and Melody Mackenzie, he did

not have to be separately admitted to represent Lubit in the adversary proceeding. The

failure to be admitted *pro hac vice* to represent Lubit in the adversary proceeding was,

Assaf acknowledged, one more mistake in the course of a series of mistakes in this

adversary proceeding.

In his written opposition to sanctions and at the sanctions hearing, Assaf defended

against sanctions by acknowledging that while he made some mistakes, none of the

mistakes were intentional.  Assaf also argued that where an attorney is discharged by his

client, as Assaf was here, no motion to withdraw as counsel is required to be filed

because under New York's applicable disciplinary rules a lawyer is not permitted to

continue representation of a client after having been discharged.  According to Assaf,

Local Bankruptcy Rule 2090-1(e) should not be read to require a motion to be relieved in

such circumstances.[1]  Assaf further argued that in similar circumstances no motion to be

relieved as counsel is required in the Northern District of New York Bankruptcy Court,

where he regularly practices, and that he has consulted with other lawyers in the Northern

District, and they agree with Assaf that no motion to be relieved is required when the

client has discharged the lawyer.[2]

### DISCUSSION

Needless to say, when practicing in federal court, Assaf is required to obey all

applicable federal rules, including the local rules.  As a member of the New York bar,

Assaf is also required to obey New York's Lawyer's Code of Professional Responsibility,

---

[1]    Assaf's Affirmation states that "I never looked at the Southern District Local Rule in question or any other rule.  Honestly, it never occurred to me that there might be or was a provision of the Bankruptcy Code, Rules or Local Rules that would have application to this situation, and, indeed, apart from the Court's interpretation of the Local Rule, there is none."  Assaf Affirmation ¶ 11 (ECF No. 54).  Assaf's ignorance of the law is not a defense.  The Court's "interpretation" of the rule is not novel.  Local Bankruptcy Rule 2090-1(e) is not unique among federal or state courts, including New York's state courts, *see infra* note 6; and New York's disciplinary rules contemplate a tribunal's rules requiring a motion to withdraw as counsel even when the client has discharged the lawyer, *see* Section B, *infra*, at 11-12.

[2]    Assaf's Affirmation states that "I spoke to several of my bankruptcy colleagues about this and, while we all concede the Rule can be read to require a motion in a termination scenario, we all have a concern about how we legitimately bill a client for such a motion or an appearance thereon on a post-termination of services basis and whether it is ethical to proceed in this fashion."  Assaf Affirmation ¶ 21 (ECF No. 54).  Assaf's conversations with "several of my bankruptcy colleagues" are not a recognized authoritative source in responding to a serious sanctions proceeding.  Furthermore, the application of court rules does not depend on whether a lawyer can bill a client for complying with the rules.

22 N.Y.C.R.R. § 1200, *et seq* (hereinafter, "Code of Professional Responsibility").[3]

Assaf has clearly violated the federal rules and the state disciplinary rules.

## A.  Assaf Violated the Local Bankruptcy Rules By Appearing and Then Withdrawing Without Permission

Assaf violated Local Bankruptcy Rule 2090-1(b) by appearing as counsel of

record for Lubit in the adversary proceeding without being admitted *pro hac vice*.  Local

Bankruptcy Rule 2090-1(a) provides as follows:

> *General.*  An attorney who may practice in the District Court
> pursuant to Civil Rule 1.3(a) and (b) of the Local District Rules may
> practice in this Court.

Assaf is a member of the bar of the State of New York and maintains his office in

Troy, New York.  Assaf acknowledged that he is not admitted to practice in the Southern

District and, therefore, he is not admitted generally to practice in this Court.

Local Bankruptcy Rule 2090-1(b) provides as follows:

> *Pro Hac Vice.*  Upon motion to the Court, a member in good
> standing of the bar of any state or any United States District Court may be
> permitted to practice in this Court in a particular case, adversary
> proceeding, or contested matter.

On May 31, 2006, Assaf moved to be admitted *pro hac vice* "to represent Melody

Mackenzie, Esq. and Kristin Chase (creditors/respondents) in the above referenced case,"

---

[3]     Local Civil Rule 1.5 of the U.S. District Court for the Southern District of New York establishes the mechanism for disciplining attorneys appearing in the Southern District of New York.  The bankruptcy court does not have a separate disciplinary process.  Instead, it refers disciplinary matters to the district court.  Local Civil Rule 1.5(d)(5) provides as grounds for imposing discipline that:

> In connection with activities in this court, any attorney is found to have engaged in conduct violative of the New York State Lawyer's Code of Professional Responsibility as adopted from time to time by the Appellate Divisions of the State of New York, and as interpreted and applied by the United States Supreme Court, the United States Court of Appeals for the Second Circuit, and this court.

Therefore, the Code of Professional Responsibility supplies the disciplinary rules applicable to lawyers appearing in this Court.  The fact that a lawyer's conduct may subject him to discipline does not limit the Court's ability to impose sanctions in the particular case in which misconduct has occurred.

specifically referring to *In re John T. Chase*, Case No. 05-45706-ajg, Chase's chapter 7

case. (Case No. 05-45706, ECF No. 9.) The Order granting Assaf's admission was

entered on June 15, 2006. (Case No. 05-45706, ECF No. 10.) Assaf acknowledged at the

June 22, 2007 sanctions hearing that he never sought admission to practice to represent

Lubit in the adversary proceeding.

The Southern District bankruptcy court *pro hac vice* rule permits admission to

practice in "a particular case, adversary proceeding or contested matter" based solely on

membership in good standing of the bar of any state or U.S. District Court. But *pro hac*

*vice* admission is limited to a particular matter – to "*a*" case, adversary proceeding or

contested matter and not *all* such matters under the umbrella of a particular bankruptcy

case. Such representation is also limited to the representation of particular clients. Assaf

violated Local Bankruptcy Rule 2090-1(b) when he appeared on behalf of Lubit in the

adversary proceeding without being properly admitted.[4] If this were Assaf's only failure

to comply with the rules, the Court might be more willing to forgo imposing sanctions, or

at least to impose a lesser sanction. Alas, this was only the first of many self-inflicted

wounds.

Assaf also clearly violated Local Bankruptcy Rule 2090-1(e) when Assaf

purported to withdraw from representing Lubit without obtaining an order permitting him

to withdraw. Local Bankruptcy Rule 2090-1(e) provides as follows:

---

[4]        There is little doubt that if Assaf had made a motion to be admitted *pro hac vice* to represent Lubit
in the adversary proceeding, the motion would have been granted. But he didn't do so. Under Southern
District Local Civil Rule 1.5(b)(6), appearing in a case without permission is grounds for imposing
discipline. *See* Local Civil Rule 1.5(b) ("Discipline or other relief, of the types set forth in paragraph (c)
below, may be imposed, by the Committee on Grievances, after notice and opportunity to respond as set
forth in paragraph (d) below, if any of the following grounds is found by clear and convincing evidence:  . .
. (6) Any attorney not a member of the bar of this court has appeared at the bar of this court without
permission to do so.")

*Withdrawal as Attorney of Record.* An attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown.

It is hard to imagine a simpler, clearer, more straight-forward rule. Assaf appeared (even though not properly admitted); he withdrew without obtaining an order, literally in the middle of trial. Assaf could withdraw "*only*" by order of the Court. The Court rejects Assaf's defense that the Court has applied an unreasonable interpretation of the rule. The language of the rule is clear; it allows of no exceptions to seeking an order of the Court. The only "authority" Assaf relies on to support his position is unidentified conversations with unidentified "bankruptcy colleagues" who, he claims, agree with his position. This is hardly legal or factual support for a defense to a sanctions proceeding.

Assaf claims that Local Bankruptcy Rule 2090-1(e) is unusual, at least as applied to withdrawal when a lawyer has been discharged by the client. The rule is not unusual.[5] For example, Southern District Local Civil Rule 1.4 provides:

**Withdrawal or Displacement of Attorney of Record**. An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

---

[5]     New York state court practice also requires a motion to withdraw. *See* CPLR § 321(b)(2) ("An attorney of record may withdraw or be changed by order of the court in which the action is pending, upon motion on such notice to the client of the withdrawing attorney, to the attorneys of all other parties in the action or, if a party appears without an attorney, to the party, and to any other person, as the court may direct."). A motion to withdraw is required even if the attorney has been discharged. *See Gersten v. Gersten,* 134 A.D.2d 224 (N.Y. App. Div. 1987) (stating that motion procedure is required even for attorneys who have been discharged). Although a client may discharge an attorney at any time with or without cause, the attorney of record may only withdraw or be discharged as prescribed by statute. *Moustakas v. Bouloukos,* 112 A.D.2d 981, 983 (N.Y. App. Div. 1985) (holding that the attorney of record was not discharged of his duties when the change had not been granted according to law).

The bankruptcy court's rule is similar to the district court's rule, although the district court rule is more specific about what must be shown to support withdrawal. Neither the district court rule nor the bankruptcy court rule sets different procedural requirements for withdrawal when the client has discharged the lawyer.[6]

In most cases in which a client has discharged the lawyer, "cause" for withdrawal will be established. While courts must necessarily be sensitive to the client's desire to discharge an attorney, there is also a countervailing interest in effective administration of justice, particularly when the case is near or in trial. Requiring that a motion to withdraw be made gives the Court a chance to question the lawyer and the client about the reasons for the discharge and withdrawal[7] – while remaining sensitive to issues of attorney-client

---

[6]     *See also* Northern District Local Civil Rule 83.2(b) ("An attorney who has appeared may withdraw only upon notice to the client and all parties to the case and an order of the Court, upon a finding of good cause, granting leave to withdraw.")  This local rule from the district in which Assaf practices leaves no doubt what a lawyer must do to withdraw as counsel.

Northern District Bankruptcy Court Local Rule 2091-1 distinguishes between withdrawal from representation of the debtor – requiring a court order, *see* Local Rule 2091-1(a) – and withdrawal from representation of other parties – requiring only written notice to the court and to all creditors and interested parties, *see* Local Rule 2091-1(b).  But the difference in practice between the bankruptcy courts in the Northern and Southern Districts does not justify Assaf's failure to comply with the Southern District rule in the *Lubit* adversary proceeding.

[7]     Sometimes an attorney's "discharge" is really the result of a dispute about unpaid fees. Nonpayment of fees may be sufficient cause to permit withdrawal.  Lawyers are not indentured servants; they have a right to be paid for their services and refusal to pay can constitute a valid ground for withdrawal.  *See Life Dome v. Church Loans and Inv. Trust*, 06 Civ. 8288(PKC), 2007 WL 1573905, *2 n.2 (S.D.N.Y. May 24, 2007) ("The New York Code of Professional Responsibility DR 2-110 permits a lawyer to seek permission of the tribunal to withdraw if the client '[d]eliberately disregards an agreement or obligation to the lawyer as to expenses or fees.'") (citations omitted).  Courts have discretion, however, to deny a motion to withdraw based on non-payment of fees, particularly if a trial date is near or, as occurred here, the case is in the middle of trial.  *Whiting v. Lacara*, 187 F.3d 317, 321 (2d Cir. 1999) ("In addressing motions to withdraw as counsel, district courts have typically considered whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel.'") (citations omitted); *Rophaiel v. Alken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) (denying motion to withdraw and noting concern with litigation delay because it would be "too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney by non-payment of fees").

privilege[8] − and to assess whether conditions on withdrawal should be imposed, *see*

*Emile v. Browner*, 95 CIV. 3836(SS) (THK), 1996 WL 724715, at *1-2 (S.D.N.Y.

December 17, 1996), whether new counsel will be substituted or whether the party can or

should be permitted to proceed *pro se*.  By simply failing to show up for the second day

of trial, without a timely motion to withdraw, Assaf violated Local Bankruptcy Rule

2090-1(e).  As explained in the next section, Assaf's conduct also violated Code of

Professional Responsibility.

### B.  Assaf Violated the Code of Professional Responsibility[9]

A lawyer admitted to practice in the State of New York is subject to discipline if

he or she violates a disciplinary rule.  *See* DR 1-102 A ("A lawyer or law firm shall not:

1. Violate a Disciplinary Rule.").  22 N.Y.C.R.R. § 1200.3.A.  Assaf violated the state

disciplinary rules by appearing in the Lubit adversary proceeding without being admitted

to practice in the Southern District bankruptcy court, either generally or *pro hac vice* in

the particular case.  DR 3-101 B provides that:

> A lawyer shall not practice law in a jurisdiction where to do so would be
> in violation of regulations of the profession in that jurisdiction.

22 N.Y.C.R.R. § 1200.16 B.

As already explained, Local Bankruptcy Rule 2090-1 required that Assaf be

admitted generally or *pro hac vice* in order to appear on behalf of Lubit in the adversary

---

[8]     *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* 464 F. Supp.2d 164, 165 (E.D.N.Y. 2006) ("A review of the relevant case law demonstrates that documents in support of motions to withdraw as counsel are routinely filed under seal where necessary to preserve the confidentiality of the attorney-client relationship between a party and its counsel, and that this method is viewed favorably by the courts.").

[9]     The Order to Show Cause did not identify issues in this sanctions proceeding arising from the New York disciplinary rules.  Assaf, however, raised the disciplinary rules in his defense arguing that the state disciplinary rules required him to withdraw immediately without seeking an order permitting withdrawal.  Federal courts in New York look to the Code of Professional Responsibility and ethics opinions interpreting the Code in deciding whether to permit withdrawal.  *See, e.g., United States v. Oberoi,* 331 F.3d 44, 48-49 (2d Cir. 2003).

proceeding.  Having done neither, in addition to violating Local Bankruptcy Rule 2090-1,

Assaf also violated DR 3-101 B.  *See also supra* note 4.

By withdrawing during trial without obtaining an order permitting his withdrawal,

in addition to violating Local Bankruptcy Rule 2090-1(e), Assaf also violated the state

disciplinary rules.  The Code of Professional Responsibility could not be clearer that a

lawyer commits a disciplinary violation when he or she withdraws from representing a

client before a tribunal without first obtaining permission from the tribunal when the

tribunal's rules require it, even if the client has discharged the lawyer.

DR 2-110 provides in relevant part:

A.  In general.
    1.  If permission for withdrawal from employment is required by
    the rules of a tribunal, a lawyer shall not withdraw from
    employment in a proceeding before that tribunal without its
    permission.
    . . . .
B.  Mandatory withdrawal.
    A lawyer representing a client before a tribunal, *with its permission
    if required by its rules*, shall withdraw from employment, and a
    lawyer representing a client in other matters shall withdraw from
    employment, if:
    . . . .
    4.  The lawyer is discharged by his or her client.

22 N.Y.C.R.R. § 1200.15 (emphasis added).

Thus, contrary to Assaf's contention, Assaf violated New York's disciplinary

rules by withdrawing as counsel in the middle of trial without the Court's permission.  As

DR 2-110 B makes clear, the disciplinary violation occurs even if Assaf's withdrawal

was mandatory because Lubit discharged him.

### C.  The Bases for Imposing Sanctions Against Assaf

Courts in this Circuit do not impose sanctions lightly.  The imposition of
sanctions requires the Court to explain the source of its power.  *Sakon v. Andreo*, 119
F.3d 109, 113 (2d Cir. 1997) ("Sanctions may be authorized by any of a number of rules
or statutory provisions, or may be permissible on the basis of the court's inherent power.
Because the various sources of the court's authority are governed by differing standards,
it is imperative that the court explain its sanctions order 'with care, specificity, and
attention to the sources of its power.'") (citations omitted).  When the court intends to
impose sanctions, proper notice of the specific conduct alleged to be sanctionable and the
authority under which the court considers the imposition of sanctions must be given to
afford the attorney a chance to be heard on the matter.  *Schlaifer Nance & Co., Inc. v.
Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) ("At a minimum, the notice
requirement mandates that the subject of a sanctions motion be informed of: (1) the
source of authority for the sanctions being considered; and (2) the specific conduct or
omission for which the sanctions are being considered so that the subject of the sanctions
motion can prepare a defense."); *see also Satcorp Intern. Group v. China Nat. Silk Import
& Export Corp.*, 101 F.3d 3, 6 (2d Cir. 1996).

The Court has the power to sanction Assaf pursuant to Fed. R. Bankr. P. 7016,
Local Bankruptcy Rule 9020-1(a) & (b), and its inherent power.  The Order to Show
Cause specifically advised Assaf that the Court would consider imposing sanctions on
each of these bases.  It also advised Assaf of his specific conduct that would be
considered in addressing the sanctions issues.  The one exception was Assaf's failure to
be admitted *pro hac vice* to represent Lubit in the adversary proceeding, which was not

13

addressed in the Order to Show Cause. But the Court advised Assaf about that issue at

the start of the sanctions hearing and offered to adjourn the hearing to permit him time to

respond or, if he chose to proceed, to make a post-hearing supplemental submission.

Assaf decided to go forward with the hearing and not to make any supplemental filing.

### 1.   Assaf Should Be Sanctioned For Violating the Rules

Fed R. Bankr. P. 7016 makes Fed. R. Civ. P. 16 applicable to adversary

proceedings. Fed R. Civ. P. 16(f) provides:

> (f) SANCTIONS. If a party or party's attorney fails to obey a scheduling or
> pretrial order, or if no appearance is made on behalf of a party at a
> scheduling or pretrial conference, or if a party or party's attorney is
> substantially unprepared to participate in the conference, or if a party or
> party's attorney fails to participate in good faith, the judge, upon motion or
> the judge's own initiative, may make such orders with regard thereto as
> are just and among others any of the orders provided in Rule 37(b)(2)(B),
> (C), (D). In lieu of or in addition to any other sanction, the judge shall
> require the party or the attorney representing the party or both to pay the
> reasonable expenses incurred because of any noncompliance with this
> rule, including attorney's fees, unless the judge finds that the
> noncompliance was substantially justified or that other circumstances
> make an award of expenses unjust.

In this case, Assaf failed to appear for the second day of trial on March 30, 2007,

a date which Assaf acknowledged was set by the Court with Assaf's agreement. The

March 30, 2007 date for the resumption of the trial was not set forth in a written order,

but Assaf acknowledged during the sanctions hearing that he specifically agreed to this

trial date. Assaf argues that because there was no written order setting the date, he cannot

be sanctioned for failing to appear at trial. Fed. R. Civ. P. 16(b) and (e) appear to

contemplate written pretrial orders – Rule 16(b) ("enter a scheduling order") and 16(e)

("After any conference held pursuant to this rule, an order shall be entered reciting the

action taken."). Sanctions under subsection (f) apply to a failure to obey "a scheduling or

pretrial order." While the Court believes that failure to appear for trial on the agreed date

is sanctionable under Rule 16(f) even without a written scheduling order, the Court will

not impose sanctions under this rule since other bases for sanctions exist.

Local Bankruptcy Rule 9020-1 provides:

(a)    *Default Sanction.*  Failure of a party or counsel for a party to
appear before the Court at a conference, complete the necessary
preparations, or be prepared to proceed at the time set for trial or
hearing may be considered an abandonment of the adversary
proceeding or contested matter or a failure to prosecute or defend
diligently, and an appropriate order of the Court may be entered
against the defaulting party with respect to either a specific issue or the
entire adversary proceeding or contested matter.

(b)    *Imposition of Costs.*  If the Judge finds that the sanctions in
subdivision (a) of this rule are either inadequate or unjust to the
parties, the Judge may assess reasonable costs directly against the
party or counsel whose action has obstructed the effective
administration of the Court's business.

Assaf's failure to appear on March 30, 2007, "at the time set for trial," violated

Local Bankruptcy Rule 9020-1(a).  The Court permitted the trial to continue without

Assaf, with Lubit proceeding *pro se*, but Local Bankruptcy Rule 9020-1(b) permits the

Court to "assess reasonable costs directly against the . . . counsel whose action has

obstructed the effective administration of the Court's business."  Assaf is subject to

sanctions under this rule.  Failure of a lawyer to appear "at the time set for trial . . .

obstructs the effective administration of the Court's business."  But since the trial

proceeded without Assaf and concluded on March 30, it is not clear what "reasonable

costs" could be assessed against Assaf under this rule.  Because the Court will impose

sanctions against Assaf for violating Local Bankruptcy Rules 2090-1(b) & (e), the Court

will not impose a separate sanction for violating Local Bankruptcy Rule 9020-1.

Local Bankruptcy Rules 2090-1(b) & (e), requiring an attorney not generally
admitted to be admitted *pro hac vice* in a particular adversary proceeding, and to obtain a
Court order permitting a lawyer to withdraw, do not by their terms provide sanctions for
violation of the rules.  But the Court has the inherent power to sanction a lawyer for
violating the Court's local rules.  *In re Sanctions for Failure to Comply with Court
Order*, 58 B.R. 560, 567 (D. Conn. 1985) (Cabranes, J.) (imposing sanctions for violation
of a local rule that resulted in the obstruction of the effective and efficient administration
of the court's business).[10]  The Court deals with the standards applicable to imposing
sanctions based on inherent power in the next section of this opinion.

2.  **Sanctions Should Be Imposed Under the Court's Inherent Power**

In considering whether to impose sanctions against an attorney pursuant to the
inherent power of the court, the standards to be applied by the court depend upon the
nature of attorney's conduct at issue.  *Sakon*, 119 F.3d at 113 ("Because the various
sources of the court's authority are governed by differing standards, it is imperative that
the court explain its sanctions order 'with care, specificity, and attention to the sources of
its power.'") (citations omitted)  In *U.S. v. Seltzer*, 227 F.3d 36 (2d Cir. 2000), the court
considered the applicable standards for imposing sanctions on an attorney pursuant to a
court's inherent power.  The court rejected the attorney's argument that bad faith must be
established in all cases.  After analyzing many of the Circuit's prior decisions that could
be interpreted as requiring a showing of bad faith, the court stated:

> In each of those cases, we found bad faith to be a prerequisite for
> imposition of sanctions where the court sanctioned an attorney by reason

---

[10]     The authority to promulgate local rules "is grounded upon the statutory rule-making power
conferred by 28 U.S.C. § 2071," Fed. R. Bankr. P. 9029, and the inherent authority of the court.  *In re
Sanctions, etc.*, 58 B.R. at 567.

of excesses in conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client.

*Id.* at 40.

The court in *Seltzer* then distinguished cases of arguably zealous advocacy from cases in which the "charges involve a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court. Under circumstances such as these, sanctions may be justified absent a finding of bad faith given the court's inherent power to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 41 (citations omitted). While identifying a circuit split about the applicable standards, the court set forth the standards that must be applied in this Circuit:

> Our opinion today therefore is intended to clarify the circumstances under which a district court has the power to sanction pursuant to its inherent authority without a finding of bad faith. When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in "the actions that led to the lawsuit . . . [or] conduct of the litigation," which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith. But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power.

*Id.* at 41-42 (citations omitted).

Assaf's conduct clearly falls within the category of alleged misconduct that is not undertaken for the client's benefit. Therefore, the Court is not required to find bad faith to impose sanctions based on the Court's inherent power. It is not entirely clear from *Seltzer* whether it limited imposition of sanctions in cases not involving misconduct undertaken for the client's benefit to cases with attorney conduct that was "negligent or reckless." *Id.* at 41. Subsequent cases appear to apply the negligence or recklessness

standard.  *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003) (stating that

*Seltzer* involved negligent or reckless conduct); *Wilder v. GL Bus Lines*, 258 F.3d 126,

130 (2d Cir. 2001) ("Such sanctions, however, are appropriate only where the attorney

has acted in bad faith in the actions that led to the lawsuit or in the conduct of the

litigation, *or where the attorney has negligently or recklessly failed to perform his

responsibilities as an officer of the court*.") (emphasis added).  On the record before the

Court, I expressly find based on clear and convincing evidence[11] that Assaf's conduct in

(1) failing to be admitted *pro hac vice*, (2) failing to appear on the second day of trial on

March 30, 2007, and (3) failing to obtain an order permitting him to withdraw as counsel

for Lubit, was, at a minimum, negligent or reckless.  Indeed, a review of the record in this

adversary proceeding, as recounted in the Background section of this opinion,

demonstrates that Assaf's conduct throughout this adversary proceeding has, at a

minimum, been negligent.[12]  Assaf appears to read or follow the rules only when it is

convenient for him to do so.  Apologies at the time of a sanctions proceeding, as Assaf

has done here, are too little, too late.  Therefore, the Court concludes that sanctions

should be ordered against Assaf pursuant to the inherent power of the Court for violating

Local Bankruptcy Rule 9020-1(b) & (e).

---

[11]      It is not clear whether the clear and convincing evidence standard applies in this case, as it does
for the determination of civil contempt.  *See Perez v. Danbury Hospital*, 347 F.3d 419, 423-24 (2d Cir.
2003) (stating that in order to find a party in civil contempt the evidence of noncompliance with the order
must be clear and convincing); *see also Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)
("In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate
to demonstrate 'reasonable certainty' that a violation occurred.") (citation omitted).  The clear and
convincing evidence standard usually is applied when a finding of bad faith is required, *see Kerin v. U.S.
Postal Service*, 218 F.3d 185, 190, 191-92 (2d Cir. 2000); here only negligence or recklessness must be
shown.  The question need not be resolved here as the Court has applied the clear and convincing evidence
standard and finds it easily satisfied.

[12]      The Order to Show Cause put Assaf on notice that his conduct throughout this adversary
proceeding, as specifically identified in the Order to Show Cause, would be considered by the Court in
deciding whether to impose sanctions.  *See supra* at 3-4.

Having concluded that Assaf engaged in serious misconduct in this case, the

Court now turns to the sanctions that are appropriate in the circumstances.

### D.  Assaf Should Be Barred From Recovering Additional Fees From Lubit

The Court has broad discretion in deciding what sanctions should be imposed.

*Rosario v. St. Luke's Hospital Center (In re Goldstein)*, 430 F.3d 106, 110-11 (2d Cir.

2005).  To use the vernacular, however, the punishment should fit the crime.  The *pro se*

debtor was not directly harmed by Assaf's misdeeds.  Chase did not incur attorneys' fees

or other demonstrable harm by reason of Assaf's misconduct.  Chase largely prevailed in

the adversary proceeding in that the Court ruled that his prepetition debt to Lubit will be

discharged.  The harm here was to Assaf's client, Lubit.  He found himself represented by

a lawyer who was never properly admitted to represent him in the case and who failed to

follow the rules throughout.  Having observed Assaf's performance since the adversary

proceeding was transferred to me in December 2006, and having reviewed the record in

the case while it was pending before Judge Gonzalez, the Court concludes that Lubit was

not well served by Assaf.  But while Lubit was unsuccessful in denying a discharge to

Chase, the fault for the result cannot be placed on Assaf.[13]  Assaf was charging Lubit on

an hourly fee basis.  A review of the billing records leaves the Court with the firm

conviction that, as a result of Assaf's mishandling of this case, Lubit was charged more

---

[13]    The Court concluded that Chase – despite his very questionable conduct – is entitled to a discharge for Lubit's prepetition claim.  The Court ruled, however, that Lubit's postpetition claim is not discharged.  *See Lubit*, 2007 WL 1470466, at *6-7.  During the sanctions hearing, Assaf claimed credit for success in denying a discharge with respect to the post-petition claim.  The Court notes that at no time during the course of the briefing or trial did Assaf ever raise the issue whether Lubit's postpetition claim would survive a discharge.  Lubit, of course, may have little chance of actually recovering money from Chase on the postpetition claim.  And, if Lubit does recover anything from Chase, it will not be attributable to Assaf's efforts.  Thus, the Court concludes, denying Assaf the ability to recover additional fees from Lubit will not result in a windfall for Lubit.

than was appropriate for the work Assaf performed on this case.  As the court held in *In re Goldstein*:

> A federal court possesses certain inherent powers "to discipline attorneys who appear before it."  These include the powers to "police the conduct of attorneys as officers of the court" and to impose sanctions for attorney misconduct.  In exercising these inherent powers, courts "have the right to inquire into fee arrangements . . . to protect the client from excessive fees[,]" and "may order attorneys to return fees the client has paid pursuant to a contract."

430 F.3d at 110 (citations omitted).

The Order to Show Cause specifically raised the issue whether Assaf should be barred from recovering additional fees from Lubit and whether disgorgement of any fees already collected should be ordered as well (*see* ECF No. 46).  At the conclusion of the sanctions hearing, the Court ordered Assaf to file non-privileged information showing the fees charged and/or collected in connection with this matter (*see* ECF No. 58), and he did so (ECF No. 65).  These records reflect that Assaf collected an initial retainer from Lubit of $3,500.  Assaf claims that he is entitled to recover an additional $17,386.84 from Lubit.

Most often the issue of fee forfeiture has arisen in the context of a suit by a lawyer to recover unpaid fees, with the client defending by asserting that forfeiture should apply, or by a client suing to recover fees previously paid.  The leading authority in this Circuit is the opinion by Judge Friendly for the *en banc* court in *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 168 (2d Cir. 1966).  Spanos, a member of the California bar with expertise in antitrust litigation, was hired to advise New York counsel for Skouras Theatres in bringing an antitrust lawsuit in New York against major movie producers.  Spanos was not a member of the New York bar.  Spanos was promised a contingent fee if

the New York suit was successful.  The New York lawsuit was indeed successful, but the

New York lawyer who engaged Spanos was replaced, and the new lawyer and his client

Skouras Theatres refused to pay Spanos his contingent fee.  Spanos sued to recover the

contingent fee; Skouras Theatres counterclaimed to recover the fees Spanos had already

received.  The district court awarded Spanos fees on the basis of *quantum meruit*.  A

Second Circuit panel reversed, concluding that since Spanos was never admitted *pro hac

vice* in the New York action, New York's policy against unauthorized practice of law

precluded Spanos from recovering his fees.  The *en banc* court then reversed the panel

decision and affirmed the district court judgment in Spanos' favor.

The New York lawyer with whom Spanos was working was supposed to move

Spanos' admission *pro hac vice*, but he never did so through no fault of Spanos.  Spanos'

work was also limited to advising the New York lawyer; Spanos never actually appeared

in court.  It also seems undisputed that the district court judge would have admitted

Spanos to practice in the case if the New York lawyer had done what he was supposed to

do.  If Spanos had been admitted *pro hac vice*, he would have been entitled to enforce the

fee agreement.  The fault lay not with Spanos but with the New York lawyer.  More

importantly, the client sought to take advantage of the situation by discharging Spanos

before he could validate his status through *pro hac vice* admission.  The court rejected

Skouras Theatres' efforts to deprive Spanos of his fee.  "Defendants could not render the

contract unlawful and unenforceable by discharging Spanos and thereby cutting off his

opportunity to validate his status through *pro hac vice* admission in the industry suit

before a court appearance on his part."  *Id.* at 169.  Judge Friendly relied on the legal

principle that one who unjustly prevents the performance of a condition will not be

permitted to take advantage of his own wrong to escape liability.[14]  *Id.*  No such

circumstances exist here.  The fault for Assaf's many misdeeds, including the failure to

be admitted *pro hac vice*, clearly lies with him.  Nor will Lubit be unfairly benefited if

Assaf is denied the ability to recover the balance of his fees.  *See supra* note 13.

Other courts have imposed forfeiture of all or part of an attorney's legal fees.  *See*

*Spivack v. Sacks*, 16 N.Y.2d 163 (1965) (holding that lawyer not admitted to practice in

state where services performed not entitled to fee); *see also In re Eastern Sugar Antitrust*

*Litig.*, 697 F.2d 524 (3d Cir. 1982) (stating that no forfeiture of fees for services rendered

before lawyer's violation, unless need to discipline and deter violations outweigh other

concerns).  Assaf's violations began at the very start of his representation when he

appeared without properly being admitted and continued until he withdrew without

obtaining a court order permitting it.  Between those points, Assaf committed numerous

additional violations of the rules.  Thus, *Eastern Sugar* supports forfeiture of all of

Assaf's fees.

---

[14]     The most significant portion of the decision in *Spanos* deals with whether New York's statutory
prohibition on unauthorized practice of law can be enforced to prevent out of state attorneys from actively
participating in cases in New York involving federal claims.  On that score Judge Friendly concluded:

> We are persuaded, however, that where a right has been conferred on citizens by federal law, the
> constitutional guarantee against its abridgement must be read to include what is necessary and
> appropriate for its assertion.  In an age of increased specialization and high mobility of the bar,
> this must comprehend the right to bring to the assistance of an attorney admitted in the resident
> state a lawyer licensed by "public act" of any other state who is thought best fitted to the task, and
> to allow him to serve in whatever manner is most effective, *subject only to valid rules of courts as*
> *to practice before them.*

364 F.2d at 170 (emphasis added).

    Assaf's situation is a far cry from what concerned the *en banc* court in *Spanos*.  Assaf's persistent
disregard of valid court rules place him in the unenviable position in which he finds himself.

The Court finds additional support for imposing forfeiture of fees as a sanction in the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS. Section § 37 of the RESTATEMENT provides as follows:

§ 37. Partial Or Complete Forfeiture of a Lawyer's Compensation

A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

The comments to this section help illuminate the circumstances that justify partial or complete forfeiture. "Forfeiture is . . . a deterrent. The damage that misconduct causes is often difficult to assess. In addition, a tribunal often can determine a forfeiture sanction more easily than a right to compensating damages." *Id.* cmt. b.

Comment d elaborates on relevant factors to be considered in imposing forfeiture:

*d. A clear and serious violation–relevant factors.* A lawyer's violation of duty to a client warrants fee forfeiture only if the lawyer's violation was clear. A violation is clear if a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful. The sanction of fee forfeiture should not be applied to a lawyer who could not have been expected to know that conduct was forbidden, for example when the lawyer followed one reasonable interpretation of a client-lawyer contract and another interpretation was later held correct.

To warrant fee forfeiture a lawyer's violation must also be serious. Minor violations do not justify leaving the lawyer entirely unpaid for valuable services rendered to a client, although some such violations will reduce the size of the fee or render the lawyer liable to the client for any harm caused (see Comment *a* hereto).

In approaching the ultimate issue of whether violation of duty warrants fee forfeiture, several factors are relevant. The extent of the misconduct is one factor. Normally, forfeiture is more appropriate for repeated or continuing violations than for a single incident. . . .

*Id.* cmt. d.

23

Comment e, dealing with the extent of forfeiture, provides in part that "[f]orfeiture does not extend to a disbursement made by the lawyer to the extent it has conferred a benefit on the client." *Id.* cmt. e.

While § 37 of the RESTATEMENT and its comments do not all point in one direction with regard to imposing a forfeiture sanction against Assaf, the Court concludes that on balance the sound principles enunciated in the RESTATEMENT support forfeiture of the fees Assaf claims are still owed by Lubit. Assaf's violations are clear and serious. The applicable law was reasonably accessible. The facts were never in dispute. A reasonable lawyer would have known that the conduct was wrongful. While the violations were not willful, Assaf's misconduct spanned the life of the case with repeated violations rather than a single incident. Strong sanctions are needed to deter Assaf's pattern of misconduct.

## CONCLUSION

Therefore, the Court concludes in the exercise of its discretion that the most appropriate sanction to impose on Assaf is an order barring Assaf from seeking to recover any additional fees or expenses from Lubit. The Court concludes, however, that Assaf's lack of willfulness militates against imposing an additional sanction of disgorgement of the retainer. Therefore, the Court will leave Assaf and Lubit where they find themselves today with respect to fees and expenses.

**IT IS SO ORDERED.**

Dated: July 31, 2007
New York, New York

_____**/s/Martin Glenn**_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

24